**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

REGINALD C.,[1]

      **Plaintiff,**

                                    **Case No. 2:24-cv-7620**

  **v.**                              **Magistrate Judge Norah McCann King**

**FRANK BISIGNANO,[2]
Commissioner of Social Security,**

      **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Reginald C. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On June 23, 2021, Plaintiff filed his application for benefits, alleging that he has been disabled since October 1, 2017. R. 98, 107, 268–69. The application was denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

upon reconsideration. R. 142–46, 149–53. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 154–56. ALJ Tracy LaChance held a hearing on May 18, 2023, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert and two medical experts, including Joseph Malancharuvil, Ph.D., a psychological expert. R. 53–91. In a decision dated October 4, 2023, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from October 1, 2017, Plaintiff's alleged disability onset date, through December 31, 2020, the date on which Plaintiff was last insured for benefits. R. 28–44. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 14, 2024. R. 1–7. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 6, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 7.[3] On January 29, 2025, the case was reassigned to the undersigned. ECF No. 13. The matter is ripe for disposition.

## II.      LEGAL STANDARD

### A.      Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected."  *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Absent

4

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B.      Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

However, "[i]f the ALJ finds that the claimant is disabled, but there is medical evidence that the claimant suffers from drug addiction or alcoholism, the ALJ must then determine whether the addiction or alcoholism 'would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled.'" *Martin v. Comm'r of Soc. Sec.*, 547 F. App'x 153, 156 (3d Cir. 2013) (quoting 42 U.S.C. § 423(d)(2)(C)). The Court of Appeals for the Third Circuit has explained how an ALJ makes this determination:

> The "key factor" is "whether we would still find [the claimant] disabled if [he] stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(1). In making this determination, the ALJ must evaluate which of the claimant's physical and mental limitations would remain if the claimant stopped using drugs or alcohol, and whether any of those limitations would be disabling. *Id*. § 404.1535(b)(2). If the ALJ determines that the remaining limitations would not be disabling, the ALJ must find that the claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability. *Id*. § 404.1535(b)(2)(i). If the ALJ determines that the remaining limitations are disabling, the ALJ must conclude that the claimant is "disabled independent of [his] drug addiction or alcoholism and . . . [his] drug addiction or alcoholism is not a contributing factor material to the determination of disability." *Id*. § 404.1535(b)(2)(ii).

*Id*.; *see also Bowers v. Comm'r of Soc. Sec.*, No. CV 16-6589, 2017 WL 4711470, at *3 (D.N.J. Oct. 20, 2017) ("Social Security Ruling (SSR) 13–2p establishes the procedure used by ALJs when evaluating drug addiction or alcoholism materiality. . . . First, the ALJ will 'apply the sequential evaluation process to show how the claimant is disabled.' . . . Next, the ALJ will 'apply the sequential evaluation process a second time to document [drug addiction and alcoholism] materiality . . . .'") (citations omitted).

## III.  ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 52 years old on December 31, 2020, the date on which he was last insured. R. 30, 42. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful

activity between October 1, 2017, his alleged disability onset date, and the date last insured. R. 31.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: seizure disorder; bilateral knee osteoarthritis; obesity; mixed substance abuse disorder; mood disorder secondary to mixed substance abuse; psychological reaction to physical disorders; unspecified personality disorder; and mild traumatic brain injury. *Id.* The ALJ also found that hypertension, spine impairment, history of Lyme disease, and amputation of left ring finger were not severe impairments. R. 31–32.

At step three, the ALJ found that, through the date on which he was last insured and including his substance use, Plaintiff met the criteria of Listing 12.04. R. 32–33. Because the ALJ found that Plaintiff's impairments included mixed substance abuse disorder and found further that Plaintiff was disabled, the ALJ went on to determine whether Plaintiff's mixed substance abuse disorder was a material contributing factor to his disability. R. 33–44. Specifically, at step two, the ALJ found that, if Plaintiff stopped his substance use, his remaining impairments — *i.e.*, seizure disorder; bilateral knee osteoarthritis; obesity; mood disorder secondary to mixed substance abuse; psychological reaction to physical disorders; unspecified personality disorder; and mild traumatic brain injury — would nevertheless cause more than a minimal impact on his ability to perform basic work activities and were therefore severe. R. 33–34 (explaining that Plaintiff "had several physical impairments during the relevant period, including osteoarthritis and obesity which are not significantly affected by the claimant's alcohol abuse" and that the record also showed that Plaintiff "was diagnosed with a seizure disorder, a remote traumatic brain injury, and some other underlying mental impairments that resulted in some limitations outside of the claimant's substance abuse").

At step three, the ALJ found that, if Plaintiff stopped his substance use, he would not have an impairment or combination of impairments that meets or medically equals a listed impairment. R. 34–36.

At step four, the ALJ found that, if Plaintiff stopped the substance use, he would have the RFC to perform medium work subject to various additional limitations but that this RFC would still preclude the performance of his past relevant work. R. 36–42.

At step five and relying on the testimony of the vocational expert, the ALJ found that, if Plaintiff stopped his substance use, he could perform a significant number of jobs that exist in the national economy. R. 43–44. The ALJ therefore found that Plaintiff's substance use disorder was a contributing factor material to the determination of disability because Plaintiff would not be disabled if he stopped the substance use. R. 44. Accordingly, the ALJ concluded that, because his substance use disorder was a contributing factor material to the determination of disability, Plaintiff was not disabled within the meaning of the Social Security Act at any time from October 1, 2017, Plaintiff's alleged disability onset date, through December 31, 2020, Plaintiff's date last insured. *Id*.

Plaintiff disagrees with the ALJ's finding that Plaintiff's mixed substance abuse disorder was material to the determination of disability and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 10. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 12.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    Avanente Tamagnini, Ph.D.

Avanente Tamagnini, Ph.D., conducted a mental status examination of Plaintiff on February 13, 2020. R. 2020–23 (Exhibit 39F/2–5). Dr. Tamagnini noted that Plaintiff had been driven to the examination by LogistiCare.  R. 2020 (noting that Plaintiff "does not have a driver's license due to seven DUI's"). Plaintiff reported that his major problems were severe depression, anxiety, alcohol and marijuana addictions, post-traumatic stress disorder ("PTSD"), neurological problems, memory loss, and complications from a head injury, all of which had a negative effect on his work performance, personal relationships, and health. *Id*. Plaintiff also reported that he was not under the care of a physician and was not taking any medication. *Id*. Dr. Tamagnini commented that it "was very difficult to obtain any psychiatric information from Reginald. He was, at times, belligerent, confused, and did not remember much of his past." *Id*. Plaintiff reported his personal and family history as follows:

> Reginald is the youngest of four siblings. He attended public school and graduated from high school. After that, he went to work for his father. Reginald stated that he was hurt when a policeman brutally hit him, and he suffered a head injury and was in an induced coma for five days. He reported that presently, he lives by himself in his mother's house. His mother lives in Florida. His father is deceased. His son died in 2018 from an overdose of heroin and Fentanyl. This impacted his life. Reginald had difficulty remembering dates and events. He was married in approximately 1988, had one son, and was divorced in 1993. He remarried in 1997, did not have any children, and divorced in 2003. Reginald reported that he had seven Dui's and was in jail from 2018 to 2019 for them. He reported that he has a few friends. He gets along with his mother and his sister. He does not have any hobbies. The last time he worked was in 2017.

R. 2021. Plaintiff "reported that he *drank a few cocktails before he came to the examination. According to him* [Plaintiff], he *drinks consistently from Friday to Sunday. He was incoherent, at times. He also stated that he smokes marijuana*. He denied the use of any illegal drugs." *Id*. (emphasis added). Upon mental status examination, Dr. Tamagnini noted as follows:

10

> Reginald's mood was depressed and pessimistic. His affect was tense, guarded, and suspicious. He denied suicidal and homicidal ideations. He reported hearing voices, specifically, the voices of his father and his son. He denied obsessive-compulsive behaviors and phobias. He reported experiencing severe anxiety. His thought processes evidenced poor concentration, racing of thoughts, and loosening of association. They were not goal-directed. Content of thought indicated flight of ideas and were impoverished. He reported that his sleep is extremely poor, and his appetite is normal.
>
> Reginald was oriented for person, place, and time. His short and long-term memory was impaired. He had difficulty recollecting past and present events. He misunderstood questions. When asked to name 3 men who were President since 1950, he stated, "I don't want to get into politics." He was able to do simple arithmetic problems such as 7x8. He was able to spell the word "world" forward but not backwards. He was able to do similarities. He was unable to do Serial 7 or Serial 3. He was unable to repeat any digits forward or backwards. He was able to recollect 1 object out of 3 immediately and 1 object out of 3 after 30 minutes. His insight and his judgment were impaired.

*Id*. Plaintiff reported that he gets up around 8:00 a.m., goes to bed round 8 p.m., and sleeps a good portion of the day. *Id*. Sometimes he cleans around the house, does his laundry when necessary, and needs to either call LogistiCare or take public transportation to shop for food or to get around. *Id*. According to Dr. Tamagnini, Plaintiff might need help in managing his funds due to his severe alcohol addiction. *Id.* Dr. Tamagnini diagnosed Major Depressive Disorder-Single Episode-Severe; Alcohol Use Disorder-Severe; Cannabis Use Disorder-Severe; Generalized Anxiety Disorder; and PTSD. R. 2023.

### B.    Joseph Malancharuvil, Ph.D.

Joseph Malancharuvil, Ph.D., testified as a psychological expert at the May 18, 2023, administrative hearing. R. 22–31. Dr. Malancharuvil had reviewed the record from Plaintiff's alleged disability onset in 2017 through the date last insured in 2020, and noted that the record documented Plaintiff's severe, long-term, mixed substance abuse as well as his unreliable reporting regarding his alleged abstinence:

11

> First of all, the claimant has a significant and long-standing history of mixed substance abuse  cocaine, marijuana and heavy use of alcohol. And I understand that he testified just a little while ago that he has not been using alcohol since 2016 which is contradicted in the record, unfortunately. For example, Exhibit l5F, the psychological evaluation that was done within the period we are considering in February of 2020, at which time the doctor observed that with his concurrence (phonetic sp.), that he came to the examination being somewhat intoxicated. He had at least two cocktails that morning and he was slurring and he was somewhat, his mental status was compromised by the use of alcohol. That's in 2020.

> And the alcohol, the current use of alcohol is mentioned consistently with the discrepancy in for example, 15F and 23F, 24F. They say no heavy use of alcohol, Exhibit 15F, page 14. That is in 2020, February of 2020. It is followed, interesting in the sense that it is around exactly almost the same month that he went to the examination drunk with alcohol. And so we have an unreliable reporting in terms of the so-called abstinence.  Remission in alcohol is not true at all. So during the period we are concerning, he was actually using heavy alcohol. And there was a DUI in 2018 and he was in jail for 18 months during 2019, in connection with that. And his use of other drugs, again, there is opiate abuse. He was found positive with Benzodiazepine and let me see when it was, the opiate abuse is mentioned, well, really early, DUI, and just a second, let me see when it was. Read in Exhibit 23F. Let me  yes, in 15F, page 58, we have a positive testing of Benzodiazepine as well as marijuana. So the use of drugs and particularly alcohol is significant. And as you know, that it can produce alcoholic, alcohol related seizures which indeed, seems to be the case here.

R. 77–78. Dr. Malancharuvil testified that Plaintiff's mixed substance abuse "is a significant contributor to his mental status during the period we are considering, only up to 2020[,]" R. 78, and that Plaintiff's mental status when sober must be considered to determine the extent of this contribution. R. 78–79 (citing Exhibit 23/49, R. 1240, reflecting medical note dated March 17, 2021). Dr. Malancharuvil specifically contrasted Plaintiff's impaired mental status when he was not sober with Plaintiff's normal mental status examinations when Plaintiff abstained:

> And look at that [Exhibit 23/49, R. 1240]. The mental status is completely intact. There is no significant issues there. And he, there's no severe mental status compromised in that examination. And that is not unusual. He was essentially, his mental status is somewhat preserved when he's not intoxicated. So he has not reached the point where he has significant issues. And so, so let me think, the doctor who examined him in February of 2020, in detailed examination, also concluded

> that his overall mental status was compromised because he was drinking that morning just prior to the examination.
>
> So independent of that, if we don't have an examination by that psychologist, where everything is normal. But if you look at the other exhibits, 47F, page 12 [R. 2804, reflecting examination dated January 27, 2023], page 23 [R. 2815, reflecting examination dated February 11, 2022], for example, these are, again, mental status exams are normal. There are no concerns that are mentioned. So let me then, go to the actual ratings. Having said that, the mixed substance abuse is a significant contributor to his mental status. He has a condition identifiable under 12.04, mood disorder secondary to mixed substance abuse. He has a condition under 12.06, an anxiety disorder secondary to mixed substance abuse. Of course he has physiological issues which have been tested by too, but I'm going to add a condition under 12.07, psychological reactions to physical conditions.

R. 79; *see also* R. 79–80 (testifying further that he inferred from the record that, under Listing 12.08, Plaintiff had a personality disorder, unspecified). According to Dr. Malancharuvil, Plaintiff "does not meet or functionally equal any of the severity requirements of the listings without the mixed substance abuse taken into account. Independent of the drugs, he is not compromised as to meet the listings." R. 80 (referring to the paragraph B criteria and testifying further that, absent his substance abuse, Plaintiff had only mild to moderate limitations in concentrating, persisting, and maintaining pace and in adapting or managing himself, and only mild limitations in information processing, following and understanding simple instructions, and social functioning); *see also id.* (acknowledging Plaintiff's traumatic brain injuries, but noting that those conditions "are diagnosed as mild without any significant compromise in his ability to function within the limits I'm going to assign to him"). However, considering Plaintiff's substance abuse, Dr. Malancharuvil opined that Plaintiff was not functional:

> [I]f it [the substance abuse] is active, and during the period it was active, depending on how intoxicated he was, or he will be, he may not be able to function in any type of work setting, especially if he was like the day he presented himself to the psychologist after having quote, unquote at least two cocktails that morning. He was not functional. So with the substance abuse, I am not sure whether he would be able to function in any type of work setting. So he would meet the listings with that consideration.

13

Now without that, I'm going to find him, the following work limitations. He is at least capable [of performing] simple and detailed tasks, easily up to four to five step instructions, in a routine could probably [perform] object-oriented work setting. Working with things well and with people. He certainly should not be irritable especially when he's withdrawing from alcohol, so I would not entrust him with a job that requires constant interactions with the public such as working in a heavily trafficked office as a receptionist or a complaint taker.

He's precluded from operating hazardous or[4] fast-moving machinery as an essential part of work.

*       *       *       *

He should not supervise other people's safety. Hyper vigilance is not (INAUDIBLE) so I would not entrust him with being in charge of making sure other people are safe. No safety officer job. And I'm not seeing any other restrictions. Of course, these are all contingent upon maintaining his sobriety.

R. 81.

In response to Plaintiff's counsel, Dr. Malancharuvil testified that, although the record reflected sustained remission after the relevant period, Plaintiff was not sober in 2020:

Q So Doctor, did you, could you tell in the record what was the longest period of sobriety that the claimant had?

*       *       *       *

ME#2: No, I cannot. But I can tell you, 23 and 24, they are constantly repeating that there's alcohol abuse and sustained remission. But that's, so I'm going, there's no record after that that would suggest that he's continuing to drink. But of course, let me see, I'm sorry. It says here after the period we are talking about, June of 2021, March of 2021 in 23F, 24F, and June of '21 and so on. So it talks about his sustained remission is mentioned after the period we are talking about. In 2020 he was not sober.

R. 83. According to Dr. Malancharuvil, the symptoms of Plaintiff's head injuries and alcohol abuse "can overlap and it [the abuse] can make it worse." R. 83–84.

---

[4] Dr. Malanchuravil clarified that Plaintiff was precluded from fast moving *and* hazardous machinery. R. 81.

14

And the problem is to distinguish what comes from which, because it has correctly stated that overlapping is the word. They get mixed up; it would be hard to distinguish which one was that. The only way is to look at his mental status when he has some sustained sobriety which we have in [Exhibits] 23 and 24F [R. 1192–1368, spanning November 22, 2020, through July 9, 2021, R. 1369–1547, spanning February 23, 2021, through July 9, 2021, respectively], because there his mental status is intact. So without the drug use or alcohol, there is no compelling evidence that the TBA (phonetic sp.) ["TBI," traumatic brain injury] had created compromise such that it would preclude work completely, no. It did say might. That's the diagnosis.

R. 84.

## V.    DISCUSSION

Plaintiff argues that the ALJ erred at step four when considering Plaintiff's mixed substance abuse disorder. *Plaintiff's Brief*, ECF No. 10, pp. 9–17. For the reasons that follow, the Court disagrees.

In cases where a claimant suffers from alcoholism or drug addiction, "an individual shall not be considered to be disabled" if "alcoholism or drug addiction" ("DAA") would be "a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); *see also* 20 C.F.R. § 404.1535(a). Social Security Ruling ("SSR") 13-2p explains that "a claimant has DAA only if he or she has a medically determinable Substance Use Disorder" and the Ruling sets out a six step process for evaluating DAA:

| 1. Does the claimant have DAA? | a. No—No DAA materiality determination necessary.<br><br>b. Yes—Go to step 2. |
|---|---|
| 2. Is the claimant disabled considering all impairments, including DAA? | a. No—Do not determine DAA materiality. (Denial.)<br><br>b. Yes—Go to step 3. |
| 3. Is DAA the only impairment? | a. Yes—DAA material. (Denial.) |

| | b. No—Go to step 4. |
|---|---|
| 4. Is the other impairment(s) disabling by itself while the claimant is dependent upon or abusing drugs or alcohol? | a. No—DAA material. (Denial.) <br><br> b. Yes—Go to step 5. |
| 5. Does the DAA cause or affect the claimant's medically determinable impairment(s)? | a. No—DAA not material. (Allowance.) <br><br> b. Yes, but the other impairment(s) is irreversible or could not improve to the point of nondisability—DAA not material. (Allowance.) <br><br> c. Yes, and DAA could be material—Go to step 6. |
| 6. Would the other impairment(s) improve to the point of nondisability in the absence of DAA? | a. Yes—DAA material. (Denial.) <br><br> b. No—DAA not material (Allowance.) |

SSR 13-2p, 2013 WL 621536, at *4–5 (Feb. 20, 2013). "If the evidence does not establish DAA, there can be no issue of DAA materiality." *Id*. at *6. Where the record documents DAA, the ALJ must "apply the appropriate sequential evaluation process to determine whether the claimant is disabled considering all of his or her impairments, including DAA." *Id*. Importantly, if the claimant is not disabled, then the ALJ must "deny the claim." *Id*. Otherwise, the ALJ must "apply the appropriate sequential evaluation process twice. First, apply the sequential evaluation process to show how the claimant is disabled." Then, "a second application of the sequential evaluation process may demonstrate that the claimant's other physical or mental impairment(s) is not sufficiently severe to establish disability by itself while the claimant is dependent upon or abusing drugs or alcohol. In this case, deny the claim because DAA is material." *Id*. The ALJ is not required "to determine whether the other impairment would improve if the claimant stopped

16

using drugs or alcohol [that] he or she is dependent upon or abusing because DAA materiality is established without this additional analysis." *Id*. On the other hand, the claim should be allowed "[i]f the claimant has another physical or mental impairment(s) that results in disability and DAA is not causing or does not affect the other impairment(s) to the point where the other impairment(s) could be found nondisabling in the absence of DAA". *Id*. In determining whether Plaintiff's impairments improve to the point of nondisability in the absence of DAA, the ALJ "must project the severity of the claimant's other impairment(s) in the absence of DAA" and "make this finding based on the evidence in the claimant's case record." *Id*. "In some cases, we may also consider medical judgments about the likely remaining medical findings and functional limitations the claimant would have in the absence of DAA." *Id*. (noting that this finding may depend "on whether the claimant's other impairment(s) is physical or mental"). "DAA is material"—and the claim should be denied—"if the claimant's other impairment(s) would improve to the point that the claimant would not be disabled in the absence of DAA." *Id*. "However, if the claimant's other impairment(s) would not improve to the point that the claimant would not be disabled in the absence of DAA, we allow the claim. In this instance, the DAA is not material to the determination of disability." *Id*.

In the present case, Plaintiff first complains that remand is warranted because the ALJ "never . . . made the initial finding of what Plaintiff's combined limitations would be when the effects of DAA were considered." *Plaintiff's Brief*, ECF No. 10, p. 9; *see also id*. at 10 (complaining further that the ALJ's failure to in this regard warrants remand). Plaintiff is mistaken. After finding that Plaintiff suffered from several severe impairments, including mixed substance abuse disorder, R. 19 (finding the additional severe impairments of seizure disorder, bilateral knee osteoarthritis, obesity, mood disorder secondary to mixed substance abuse,

17

psychological reaction to physical disorders, unspecified personality disorder, and mild traumatic brain injury), the ALJ determined that Plaintiff's impairments, including his mixed substance abuse disorder, met the criteria of Listing 12.04. R. 32–33. As detailed above, it was only after making this determination that the ALJ proceeded again through the sequential evaluation process in order to determine whether Plaintiff's mixed substance abuse disorder was a material contributing factor to Plaintiff's disability. R. 33–44. The ALJ did not err in this regard. R. 32–33; *see also* SSR 13-2p, 2013 WL 621536, at *5.

Plaintiff next contends that the rationales of the ALJ and Dr. Malancharuvil "do not reasonably support the finding that Plaintiff's DAA is material[.]" *Plaintiff's Brief*, ECF No. 10, p. 10. Plaintiff specifically argues that the ALJ and Dr. Malancharuvil impermissibly relied on evidence generated after the lapse of Plaintiff's date last insured, December 31, 2020, when concluding that Plaintiff's DAA was material. *Id*. at 10–17.

The Court is not persuaded that this issue requires remand. SSR 13-2p provides that an ALJ may consider periods of abstinence when determining whether DAA is material in cases where a claimant has co-occurring mental disorders. SSR 13-2p, 2013 WL 621536, at *12. However, "the claimant should be abstinent long enough to allow the acute effects of drug or alcohol use to abate." *Id*. (explaining further that because "there is a wide variation in the duration and intensity of substance use among claimants with DAA, and there are wide variations in the interactions of DAA with different types of physical and mental disorders[,]" SSR 13-2p is "unable to provide exact guidance on the length and number of periods of abstinence to demonstrate whether DAA is material in every case"). SSR 13-2p further instructs that

> [e]specially in cases involving co-occurring mental disorders, the documentation of a period of abstinence should provide information about what, if any, medical

findings and impairment-related limitations remained after the acute effects of drug and alcohol use abated. Adjudicators may draw inferences from such information based on the length of the period(s), how recently the period(s) occurred, and whether the severity of the co-occurring impairment(s) increased after the period(s) of abstinence ended. To find that DAA is material, we must have evidence in the case record demonstrating that any remaining limitations were not disabling during the period.

*Id.*

In the present case, the ALJ and Dr. Malancharuvil considered a period of abstinence—which, they both recognized, came after the relevant period—when determining that Plaintiff's DAA was material to his disability during the relevant period. R. 37–41, 78–79, 83. The ALJ explained that Plaintiff drank alcohol throughout much of the relevant period, contrasting Plaintiff's impaired mental status during an examination at which he was intoxicated, with another consultative examination where Plaintiff did not appear to be intoxicated and the mental status examination was normal:

> As outlined above, the claimant has an extensive history of polysubstance abuse, with the record referencing heavy alcohol abuse, marijuana use, and even past cocaine use (e.g., Ex. 24F/92; 39F). Alcohol abuse has been his primary problem and he has had multiple DUI arrests and was incarcerated in 2015 (e.g., Ex. 23F/18). His assertion that he stopped drinking in 2016 is false. The record includes many of the claimant's own reports that he continued drinking throughout much of the relevant period (Ex. 14F/9-10; 9F/2, 4; 15F/4). The claimant even attended a consultative examination while intoxicated in 2020 (Ex. 39F). The claimant described daily marijuana use and that a doctor provided him a medical marijuana card (e.g., Ex. 24F/123-24). The claimant received little treatment for substance abuse or any other mental health symptoms during the period at issue. The claimant was on Librium for a time in 2017 to help curb his alcohol abuse, but the claimant continued to drink during and after that treatment (e.g., Ex.14F/8-10; 9F/4). The record references the claimant's interest in attending an inpatient detoxification program in 2018, but here is no evidence that the claimant followed through with that treatment (Ex. 9F/2).
>
> A consultative examination with Dr. Tamagnini highlights the effect of the claimant's alcohol abuse (Ex. 39F). The claimant complained of severe depression, anxiety, and memory loss, with complications for prior head injuries (Ex. 39F/2-3). Dr. Tamagnini also noted the claimant's alcohol and marijuana addictions, and the claimant admitted drinking several cocktails prior to the examination and that he

19

generally drank alcohol consistently from Friday to Sunday (Ex. 39F). The claimant reported that he had a few friends and got along well with his mother and sister 9E.x 39f/3). He also described doing some chores and laundry, while being able to take public transportation (Ex. 39F/4). On examination, the claimant was disheveled, unsteady when walking, with confabulated speech, and poor eye contact (Ex. 39F/3). He was tense and guarded and reported hearing voices of his son and father (Ex. 39F/4). The claimant had impaired memory and concentration, and he could not spell "world" backwards or complete the serial 3s or 7s tasks (Ex.39F/3-4). Dr. Tamagnini assessed major depressive disorder, general anxiety disorder, possible PTSD, as well as alcohol use disorder and cannabis use disorder (Ex. 39F/4-5). Notably, in another consultative examination conducted a month prior, the claimant did not appear intoxicated, and a brief mental status examination was normal, as the claimant was oriented, he could spell "cloud" backwards, he could do the serial 7s task, and he had no problems with memory (e.g., Ex. 40F/3).

R. 37–38. The ALJ also considered evidence from early 2021, shortly after the date on which

Plaintiff was last insured, reflecting improved symptoms during a period of abstinence:

This evidence demonstrates the claimant's significant improvement in the absence of alcohol abuse. Despite the limited treatment during the relevant period, the record shows regular alcohol abuse, and an examination while the claimant was intoxicated showed many abnormalities. While the claimant was sober during the intensive outpatient program, mental status examinations improved, with few memory or concentration deficits. During that time the claimant engaged in many different activities, such as using a bulldozer to expand his mother's lawn, helping run errands, getting part time work, working on his basement, attending church, attending a bible study (Ex. 24F/159 [R. 1527, reflecting progress notes dated May 19, 2021], 164 [R. 1532, reflecting progress notes dated April 16, 2021], 169 [R. 1537, reflecting progress notes dated March 17, 2021]). While the claimant has his history of head injuries and a possible mild traumatic brain injury, these issues did not seem to significantly affect the claimant's functioning outside of his substance abuse. Treatment notes in the inpatient outpatient program show improved mental status examinations, including cognitive functioning, and the claimant was able to engage in many different activities. Evaluations would likely have shown some related abnormalities during periods of sobriety if the head injuries were as severe as the claimant alleged.

R. 39.

Overall, this evidence does not support the alleged limitations, particularly in an absence of substance abuse. As outlined above, the claimant's symptoms and overall functioning improved during a sustained period of abstinence. This improvement occurred despite the possible existence of a traumatic brain injury and with the claimant's seizure disorder. Treatment notes show that the claimant's seizures were fairly well controlled outside of a few months. Moreover, the

claimant was able to engage in many demanding tasks despite his pain, obesity, and other symptoms. The claimant described walking several miles a day, chopping wood, and doing many projects at home. These factors are all consistent with the residual functional capacity outlines above.

R. 40. The ALJ went on to find persuasive the testimony of Dr. Malancharuvil, who also considered Plaintiff's improved status during an intensive outpatient program shortly after the lapse of his insured status:

> The undersigned finds Dr. Malacharuvil's [sic] opinion persuasive. Dr. Malacharuvil [sic] opined that the claimant's impairments did not meet or medically equal any mental listing in the absence of substance abuse. Under those circumstances, he opined that the claimant would have been capable of simple and detailed tasks, in a routine, object-oriented work setting. He stated that the claimant could not have constant interaction with the public, that he should not supervise outer people, and that the claimant needed to avoid hazards. This opinion is consistent with and supported by the medical evidence of record. Dr. Malacharuvil [sic] reviewed the entire record and discussed specific parts of the record in supporting his opinion. He stated that the claimant's time in the intensive outpatient program showed that the claimant's alcohol abuse was in sustained remission during at that time. Mental status examinations in that program showed largely normal findings, as he had normal grooming and hygiene, good eye contact, normal speech, normal thought process, intact memory and concentration, and improved mood (e.g., Ex. 23F/8-9 [R. 1199–1200, reflecting progress notes dated July 9, 2021], 18-19 [R. 1209–10, reflecting progress notes dated June 24, 2021]). This contrasts the claimant's presentation at a consultative examination in 2020 when he was intoxicated and exhibited abnormalities in most areas of the examination (Ex. 39F [R. 2019–23, reflecting consultative examination report dated January 13, 2020]). Dr. Malacharuvil [sic] acknowledged that the claimant's traumatic brain injury could overlap and exacerbate other impairments, but that there was still evidence of improvement during a period of sustained sobriety and no evidence that the claimant's brain injury would preclude work in the absence of substance abuse. The undersigned therefore finds Dr. Malacharuvil's [sic] opinion persuasive.

R. 41; *see also* R. 79 (reflecting Dr. Malancharuvil's testimony that "during the period we are concerning, he was actually using heavy alcohol" and "the use of drugs and particularly alcohol is significant" and therefore "the mixed substance abuse is a significant contributor to his mental status during the period we are considering, only up to 2020"), 83 (reflecting Dr.

Malancharuvil's testimony that, "after the period we are talking about," in March and June of 2021, the evidence reflects Plaintiff's "sustained remission").

In short, the record evidence detailed above sufficiently supports the ALJ's finding that Plaintiff's DAA was material. *See* SSR 13-2p, 2013 WL 621536, at \*5, 12; *see also Pintal v. Comm'r of Soc. Sec.*, 602 F. App'x 84, 88–89 (3d Cir. 2015) "[T]he ALJ's decision that Pintal's alcohol abuse is a contributing factor material to his disability is supported by substantial evidence" where, *inter alia*, "[t]he treatment records and other evidence show that Pintal responded well to treatment and had more normal mental status examinations while sober"); *cf. McGill v. Comm'r of Soc. Sec.*, 288 F. App'x 50, 52–53 (3d Cir. 2008) ("Viewed as a whole, 'a reasonable mind might accept [the record evidence] as adequate to support' the ALJ's findings that McGill's behavioral and functional problems were attributable to DAA, and that in the absence of DAA, she would not be disabled.") (citations omitted). Evidence relating to Plaintiff's abstinence shortly after the lapse of his insured status was clearly relevant to the materiality of his substance abuse disorder during the relevant time period. Under these circumstances, the Court cannot say that the ALJ erred in considering (and relying on Dr. Malancharuvil's opinion) in her determination that Plaintiff's DAA was material.[5] Notably, SSR 13-2p does not require

---

[5] In a footnote, Plaintiff complains that the ALJ's findings reflected "inconsistency" when she considered evidence of abstinence after the date last insured, but refused to consider Plaintiff's disruptive behavior during the hearing as evidence supporting Plaintiff's continuing impairment. *Plaintiff's Brief*, ECF No. 10, p. 14 n.5. However, the ALJ explained that she rejected that evidence not only because it came approximately two and a half years after the relevant period, but for additional reasons:

> The undersigned notes that at the hearing, the claimant continually made comments in the hearing during other people's testimony, despite repeated requests to stop. The claimant's representative suggested that the claimant's conduct is evidence that the claimant would not be able to meet the basic mental demands of unskilled work. However, this hearing was conducted approximately two and a half years after the date last insured and has little bearing on the claimant's functioning during the

that evidence of abstinence be generated during the period at issue. *See generally* SSR 13-2p, 2013 WL 621536; *see also Jeffrey S. v. Kijakazi*, No. 1:21-CV-03032-LRS, 2022 WL 17371089, at *5 (E.D. Wash. Jan. 27, 2022) ("Furthermore, S.S.R. 13-3p does not require that periods of abstinence be during the relevant period; therefore, the ALJ will not disturb the ALJ's determination."); *cf. Kroeger v. Saul*, No. 18-CV-00389-SI, 2019 WL 4451025, at *13 (N.D. Cal. Sept. 17, 2019) ("Nothing in SSR 13-2p states that an ALJ should only look to periods of abstinence that occur before the "live period" rather than after."). Moreover, Plaintiff has not pointed to any authority binding on this Court that forbids consideration of evidence dated after the period at issue where that evidence sheds light on the claimant's condition during the relevant period. *See generally Plaintiff's Brief*, ECF No. 10; *cf. Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684, 688 (3d Cir. 2020) ("While evidence generated after a claimant's date last insured can shed light on his condition during the insured period, that evidence does not necessarily compel the Commissioner to conclude that the claimant's condition during the insured period was as severe as it became after the date last insured.") (citations omitted).

In continuing to challenge the ALJ's decision, Plaintiff makes much of Dr. Malancharuvil's testimony that symptoms arising from both DAA and Plaintiff's head injuries

---

relevant period. Moreover, it is impossible to determine whether the claimant's presentation at the hearing occurred while intoxicated. Multiple notes in the record contradict the claimant's testimony that he stopped drinking in 2016 (e.g., Ex. 14F/9-10; 9F/4; 15F/4; 39F). Neither the undersigned nor the claimant's representative are medical sources, and we cannot interpret the claimant's behavior at the hearing to how he would function in a work environment. For these reasons the undersigned has not considered the claimant's behavior in the hearing in the residual functional capacity assessment.

R. 37. The ALJ's explanation in this regard satisfies the Court that the ALJ did not improperly cherry pick the evidence or otherwise unreasonably reject evidence of Plaintiff's behavior at the hearing.

can overlap, thereby undermining that expert's opinion that Plaintiff's DAA was material to his disability. *Plaintiff's Brief*, ECF No. 10, pp. 8–10 (citing R. 84). However, as noted above, Dr. Malancharuvil explained that, in rendering his opinion, he differentiated those categories of symptoms by looking to a period of sobriety when Plaintiff's condition and symptoms had improved. R. 78–79, 83–84.

Finally, Plaintiff complains that the ALJ (and Dr. Malancharuvil) made an "unsupported assumption" about the effect of DAA based on Plaintiff's admission to drinking alcohol prior to Dr. Tamagnini's psychological examination when that examining physician "noted no such concern while reporting a significant array of mental exam findings[.]" *Plaintiff's Brief*, ECF No. 10, pp. 13, 15–16. Plaintiff's argument is not well taken. For reasons detailed above, the record supports that both the ALJ and Dr. Malancharuvil reasonably considered the effect of Plaintiff's alcohol consumption on his appearance and performance during Dr. Tamagnini's evaluation. R. 38, 77, 79, 2020–23. Plaintiff's argument, therefore, boils down to nothing more than a disagreement with the ALJ's decision, which the Court has already explained is supported by substantial evidence. *See Perkins v. Barnhart*, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence.").

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date:  February 18, 2026                                      *s/Norah McCann King*
                                                      NORAH McCANN KING
                                                      UNITED STATES MAGISTRATE JUDGE


24